**UNITED STATES of America**
v.
**Ronald P. MOYER, Defendant.**
No. 68 Cr. 490.

United States District Court
S. D. New York.

Dec. 17, 1969.

See also D.C., 299 F.Supp. 225.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, New York City, for United States of America; Daniel J. Sullivan, Asst. U. S. Atty., New York City, of counsel.

Lefcourt, Garfinkle, Crain, Cohn, Sandler & Lefcourt, New York City, for defendant; Frederick H. Cohn, Carol H. Lefcourt, Willliam E. Crain and Sanford M. Katz, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

This is a criminal prosecution charging defendant Ronald P. Moyer with failure to submit to induction into the United States armed forces, in violation of 50 U.S.C.App. § 462(a) and 32 C.F.R. § 1632.14. Defendant waived a trial by jury, and the case was tried to the court on Ooctober 24 and October 27, 1969.

There is no dispute as to most of the facts. Defendant registered on November 28, 1962 with Selective Service Local Board No. 11, White Plains, New York. At the time of registration, he was a full-time undergraduate student and was granted a II–S. student deferment. He maintained that deferred classification for four years until November 10, 1966 when he was reclassified I–A, available for military service, because he had fallen behind his class. Defendant wrote to the board on November 22, 1966 and explained that due to his unacceptable work in school, he had to transfer to a different college and was at the time attending Virginia Polytechnic Institute in Blacksburg, Virginia, still pursuing his bachelor's degree. His appeal from the I–A classification was denied on February 14, 1967, and he was reclassified I–A by unanimous vote of the appeal board.

After some diffficulty due to defendant's attendance at school in Virginia, he reported for an armed forces physical examination on June 28, 1967 and was found physically fit for military duty. Shortly thereafter, he submitted a request for an undergraduate student deferment. The board took no action regarding this request, apparently because defendant had already had a II–S classification for four years.

Defendant, on October 12, 1967, mailed to the board his draft card, notice of classification and a letter. The letter explained:

"It is with deep sorrow that I must return my draft card to my local board in protest over the war in Vietnam. I hope that you understand that this act of civil disobedience is because of my moral convictions which say to me that man should not be forced to kill another human being."

The local board received these documents and apparently forwarded them to the State Director of Selective Service for advice. Approximately two months later, on December 6, 1967, the State Director advised the local board to declare defendant delinquent because he had mailed in his draft card and notice of classification, as proscribed by Selective Service Local Board Memorandum No. 85. The board, at its meeting on December 12, 1967, officially declared defendant a delinquent and mailed to him on December 19, 1967 a delinquency notice.

The board, on January 30, 1968, mailed to defendant an order to report for induction scheduled for February 26, 1968. Below the title of the form was typed the word " 'Delinquent' ".

Defendant reported for induction as ordered, but refused to step forward when his name was called by the induction officer. The induction officer then explained to defendant that his refusal to submit to induction was a crime punishable by a term of imprisonment of not more than five years, or a fine of not more than $10,000, or both. Despite this, defendant refused to step forward and wrote out a statement, witnessed by the induction officer, explaining that he had to refuse induction because of religious and moral reasons.

Defendant admits all the above facts, but argues that the induction order violated his federal constitutional right to due process because: (1) the board failed to send to him a special form for conscientious objector (SS Form 150) and failed to consider his request for a reopening and reclassification after he mailed the board the letter explaining his moral objections to war; (2) the board resorted to punitive reclassifica-

tion in declaring him a delinquent pursuant to Selective Service Local Board Memorandum No. 85; (3) the board sent him an outdated and superseded notice of delinquency which failed to advise him of his right to go to the nearest local board for advice; (4) the board failed to meet in order to consider whether to permit defendant to expunge his delinquency after he refused induction and (5) the board failed to maintain records which would enable defendant to ascertain whether he was called for induction in the proper order.

Defendant's first argument, that the board failed to send him a Form 150, is based on the letter he sent the board on October 12, 1967 along with his draft card and notice of classification. Defendant claims that his letter notified the board that he was seeking deferment as a conscientious objector and therefore should have been sent a Form 150.

■ A registrant need not label the classification he requests. Since registrants are denied counsel during the classification process, allegedly because of the informality of the Selective Service procedures, draft boards cannot hold registrants to a strict use of technical statutory language. The information presented, not the label used, controls.[1]

The board's executive secretary admitted at trial that if a registrant came into the board and orally presented to her the same information contained in defendant's letter of October 12, 1967, she would have instructed the registrant to write out the information and would have given him a Form 150 to fill out and return to the board. Surely, the practice should be no different simply because a registrant is away at school and forced to present his facts by mail.

■ The letter of October 12, 1967, therefore, sufficiently apprised the board of defendant's claim for conscientious objector classification and was, in effect, a request for a Form 150.

The regulations require that a draft board furnish a registrant a Form 150 upon request.[2] The form is a questionnaire used as the basis for determining if a claim for conscientious objector classification is valid. Failure to supply the form upon request is a violation of the board's governing regulations and prejudices a registrant because it denies him conscientious objector classification before the board has had an opportunity even to consider the validity of his claim. Such lawless and prejudicial action, when the right to freedom of conscience hangs in the balance,[3] is a blatant violation of the constitutional guarantee of procedural due process.[4]

■ It is clear, based on the testimony of the executive secretary of the board and our examination of defendant's Selective Service file,[5] that the board never sent to defendant a Form 150. This failure to furnish defendant with a Form 150 was a violation of his right to due process of law.[6]

Defendant also claims that his right to procedural due process was violated by the board's failure to consider the facts he presented in his letter of October 12, 1967 in support of his request for a reopening and reclassification as a conscientious objector.

■■ A board must receive and consider all information presented that is pertinent to a registrant's classification.[7] A board must reopen a classification on its own motion if facts are presented which were not considered when regis-

1. 32 C.F.R. § 1624.1(b); see United States v. Freeman, 388 F.2d 246, 249 (7th Cir. 1968); United States ex rel. Vaccarino v. Officer of the Day, 305 F. Supp. 732 (S.D.N.Y., 1969).

2. 32 C.F.R. § 1621.11.

3. See United States v. Freeman, *supra*.

4. See Boswell v. United States, 390 F.2d 181, 183 (9th Cir. 1968).

5. Government's Exhibit 4.

6. Boswell v. United States, *supra*.

7. 32 C.F.R. § 1622.1(c).

trant was classified which, if true, would justify a change in classification.[8] Failure to reopen after registrant presents a prima facie case for a requested deferment violates due process of law because it denies registrant not only the right to a personal appearance before the board, but also the right to appeal the denial of his requested deferment.[9]

Determining whether to reopen, therefore, requires the board's considering the facts registrant presents which are pertinent to a possible deferment. Failure to consider such facts is as much a violation of due process as failure to reopen after registrant presents a prima facie case, because it denies registrant a reopening without ever determining whether he has presented facts which, if true, would entitle him to a deferment.[10]

Defendant's letter of October 12, 1967 presented the board with facts pertinent to a possible deferment of registrant as a conscientious objector, and it was in plain nonstatutory language a request for a reopening of his I–A classification and for a reclassification as a conscientious objector. The board's failure, therefore, to consider the facts presented in the letter of October 12, 1967 violated defendant's right to procedural due process.[11]

■■ As a result of the board's failure to furnish defendant with a Form 150, and its failure even to consider his request for reopening and reclassification, the induction order which defendant refused to obey is based on classification procedures which denied him due process of law and is therefore invalid. A valid induction order is an essential element of the crime, and the Government has here failed to prove beyond a reasonable doubt that the induction order issued on January 30, 1968 was valid.[12]

Although defendant's other arguments present interesting constitutional questions, consideration of them would be purely academic and totally unnecessary to a determination of this case.

Accordingly, defendant is found not guilty of the crime charged.

The foregoing opinion constitutes the court's findings of fact and conclusions of law, in accordance with Rule 23(c) of the Federal Rules of Criminal Procedure.

---

8. 32 C.F.R. § 1625.2(b); United States v. Vincelli, 215 F.2d 210, 213 (2d Cir. 1954); United States v. Burlich, 257 F. Supp. 906, 910 (S.D.N.Y.1966).

9. United States v. Vincelli, *supra*; United States v. Burlich, *supra*, at 911; United States ex rel. Vaccarino v. Officer of the Day, *supra*.

10. United States v. Walsh, 279 F.Supp. 115, 120–121 (D.C.Mass.1968); Helden v. Laird, 306 F.Supp. 1351 (S.D.N.Y., 1969).

11. United States v. Walsh, *supra;* Helden v. Laird, *supra*.

12. Since defendant exhausted all administrative remedies, including reporting for induction, there is no question that he is entitled to challenge the constitutional validity of his classification. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944). It does not matter whether the Government or defendant had the burden of pleading, and ultimately proving, the validity of the induction order, because we find, as a matter of law, that the induction order violated due process and was, therefore, invalid. Boswell v. United States, *supra*, 390 F.2d at 183; United States v. Burlich, *supra*, 257 F.Supp. at 913.